1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JOHN FUNDINGSLAND,

      Plaintiff,

  v.

OMH HEALTHEDGE HOLDINGS, INC.,

      Defendant.

Case No. 15-cv-01053-BAS(WVG)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT OMH HEALTHEDGE HOLDINGS, INC.'S MOTION TO DISMISS AND STRIKE JURY TRIAL DEMAND**

**[ECF No. 8]**

## I. INTRODUCTION

On May 11, 2015, Plaintiff John Fundingsland commenced this action against his former employer Defendant OMH Healthedge Holdings, Inc. ("OMH"). (ECF No. 1.) This action arises out of a "Stock Option Award Agreement" in which OMH granted Plaintiff stock options as part of his employment compensation. Plaintiff brings claims against OMH for breach of the Stock Option Award Agreement, breach of the implied covenant of good faith and fair dealing arising from the agreement, and fraudulent misrepresentation and concealment pertaining to the agreement.

1    OMH now moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of

2    the Federal Rules of Civil Procedure. (ECF No. 8.) OMH also requests the Court

3    strike Plaintiff's jury trial demand based on a pre-dispute jury trial waiver contained

4    in the Stock Option Award Agreement. (*Id.*) Plaintiff opposes. (ECF No. 10.)

5    The Court finds this motion suitable for determination on the papers submitted

6    and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons set forth below,

7    the Court **GRANTS IN PART** and **DENIES IN PART** OMH's motion to dismiss

8    the Complaint and strike Plaintiff's jury trial demand.

9

10   **II.     BACKGROUND**

11   Plaintiff worked as the Chief Operating Officer of OMH's company in India

12   from approximately April 2011 to May 2012. (Compl. ¶¶ 6–9, ECF No. 1.) As part

13   of Plaintiff's compensation, OMH granted Plaintiff stock options via the parties'

14   Stock Option Award Agreement. (*Id.* ¶ 6, Ex. 1 ("Stock Option Award

15   Agreement").) This agreement incorporates a "Notice of Stock Option Award" that

16   grants Plaintiff the right to purchase 268 shares of OMH's stock for an exercise

17   price of $2,493.34, subject to a vesting schedule. (*Id.*)

18   In addition, the Stock Option Award Agreement contains a choice-of-law

19   provision that provides:

20   > The Notice, the Plan and this Option Agreement are to be construed in
21   > accordance with and governed by the laws of the state of Delaware
22   > without giving effect to any choice of law rule that would cause the
23   > application of laws of any jurisdiction other than the laws of the state
     > of Delaware to the rights and duties of the parties.

24   (Stock Option Award Agreement § 17.) The agreement also contains a pre-dispute

25   jury trial waiver as follows:

26   //

27   //

28   //

19. <u>Dispute Resolution</u>[.]  The provisions of this Section 19 shall be the exclusive means of resolving disputes arising out of or relating to the Notice, the Plan and this Option Agreement . . . . THE PARTIES ALSO EXPRESSLY WAIVE ANY RIGHT THEY HAVE OR MAY HAVE TO A JURY TRIAL OF ANY SUCH SUIT, ACTION OR PROCEEDING.

(*Id.* § 19.)

After Plaintiff terminated his employment with OMH, Plaintiff and OMH entered into a written separation agreement ("Separation Agreement") dated May 28, 2012, which modified some of the terms of Plaintiff's original employment letter and the Stock Option Award Agreement. (Compl. ¶ 9, Ex. 2.) The Separation Agreement specifies that Plaintiff must exercise his stock options by October 15, 2012. (*Id.*) The Separation Agreement also provides that:

If a change of control occurs prior to you exercising your options, it is anticipated that the buyer will only purchase a portion of the outstanding options from the management team (50% is our expectation but will be up to the buyer), which you are a part of. Whatever portion the buyer allows the management team to exercise is the same percentage that will be used to determine the number of options you will be able to sell.

(*Id.*)

Finally, on or about March 29, 2013, Plaintiff and OMH entered into another written agreement ("March 2013 Agreement"), which again modified the Stock Option Award Agreement by extending the exercise date for Plaintiff's stock options to December 31, 2013, and reducing the number of his options from 268 to 90. (Compl. ¶ 11, Ex. 3.)

OMH is not a publicly-traded company. (Compl. ¶ 12.) Therefore, Plaintiff alleges OMH "controlled all information relating to the fair market value of its shares. Without such information, i.e. whether the fair market value exceeded the exercise price in the notice, Plaintiff could not make a decision as to whether it made sense to exercise his options." (*Id.*) Plaintiff claims that he repeatedly requested information from OMH regarding the fair market value of the company's shares but

15cv1053

that OMH never provided such information. (*Id*.)

Plaintiff further alleges that he "repeatedly inquired as to whether there were any plans to sell the company or if a change in control of ownership was imminent." (Compl. ¶ 13.) He claims he "was repeatedly told no." (*Id*.) Specifically, on October 24, 2013, Plaintiff alleges that he spoke with Anurag Mehta, a co-founder and president of the company, who categorically denied that any sale or negotiations to sell the company had occurred. (*Id*. ¶ 15.) Plaintiff alleges that Mehta stated, "there is no activity of any kind concerning any company transaction." (*Id*.)

Then, on January 29, 2014, Mehta informed Plaintiff that a change in ownership occurred in August 2013 and that Plaintiff's options terminated as a result. (Compl. ¶ 16.) Plaintiff alleges that OMH intentionally withheld information to keep Plaintiff from exercising his options. (*Id*. ¶ 17.) Plaintiff believes that other members of OMH's management team were able to sell at least fifty percent of their options to the new majority shareholder. (*Id*.)

Based on the foregoing, Plaintiff brings claims against OMH for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) fraudulent misrepresentation and concealment. (*See generally* Compl.)

## III.   DISCUSSION
### A.   Motion to Dismiss
#### 1.   *Legal Standard*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed

factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

When a claim is based on fraud or mistake, the circumstances surrounding the fraud or mistake must be alleged with particularity. Fed. R. Civ. P. 9(b). If the allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). To satisfy the particularity requirement of Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Plaintiffs must plead enough facts to give defendants notice of the time, place, and nature of the alleged fraud, together with the content of any alleged misrepresentation and explain why it is false or misleading. *See id.*

1   at 1107. The circumstances constituting the alleged fraud must "be specific enough
2   to give defendants notice of the particular misconduct . . . so that they can defend
3   against the charge and not just deny that they have done anything wrong." *Id.* at
4   1106 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001))
5   (internal quotation marks omitted); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d
6   1541, 1547 (9th Cir. 1994), *superseded by statute on other grounds as stated in*
7   *Ronconi v. Larkin,* 253 F.3d 423, 429 n.6 (9th Cir. 2001). "Malice, intent,
8   knowledge, and other conditions of a person's mind may be alleged generally." Fed.
9   R. Civ. P. 9(b).

10      In ruling on a Rule 12(b)(6) motion, "a court may not look beyond the
11   complaint to a plaintiff's moving papers, such as a memorandum in opposition to a
12   defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194,
13   1197 n.1 (9th Cir. 1998). However, documents specifically identified in the
14   complaint whose authenticity is not questioned by parties may be considered. *Fecht*
15   *v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995), *superseded by statute on other*
16   *grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.
17   Supp. 1297, 1309 (C.D. Cal. 1996). Moreover, a court may consider the full text of
18   those documents even when the complaint quotes only selected portions. *Id.*

19      As a general rule, a court freely grants leave to amend a complaint that has
20   been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture*
21   *Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied
22   when "the court determines that the allegation of other facts consistent with the
23   challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*,
24   806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

25

26          **2.     *Choice of Law***

27      As a threshold matter, the Court will determine which jurisdiction's law
28   governs Plaintiff's claims because the Stock Option Award Agreement contains a

choice-of-law provision. In diversity actions, federal courts apply the choice-of-law rules of the forum state—here, California. *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). California courts recognize the strong policy considerations in favor of enforcing freely negotiated choice-of-law clauses. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 462 (1992). Thus, California courts generally enforce the parties' intention "if the parties state their intention in an express choice-of-law clause." *Hatfield*, 564 F.3d at 1182 (quoting *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1450 n.7 (2007)) (internal quotation marks omitted).

In *Nedlloyd*, the California Supreme Court identified the proper test for deciding whether to enforce a contractual choice-of-law provision. 3 Cal. 4th at 464–66. First, the court must determine whether: (1) the chosen jurisdiction has a substantial relationship to the parties or their transaction; or (2) any other reasonable basis for the choice of law exists. *Id.* at 465–66. Next, if either requirement is met, the court will enforce the provision unless the chosen jurisdiction's law is contrary to a fundamental public policy of California and California has a materially greater interest in deciding the issue.[1] *Id.* at 466.

The California Supreme Court later clarified where the burden lies under this analytical framework in *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 (2001). The court instructed that the proponent of the choice-of-law clause—here, OMH—bears the initial burden of demonstrating that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law. *Wash. Mut. Bank, FA*, 24 Cal. 4th at

---

[1] There is also a possibility that California's choice-of-law rules would require examination of a fundamental public policy and the material interest of a state other than California if California law would not apply in the absence of the parties' choice of law. *See Nedlloyd*, 3 Cal. 4th at 466 ("[T]here may be an occasional case in which California is the forum, and the parties have chosen the law of another state, but the law of yet a third state, rather than California's, would apply absent the parties' choice).

917. Once the proponent meets this burden, the clause will generally be enforced unless the other side can show that the chosen jurisdiction's law is contrary to a fundamental public policy of California and that California has a materially greater interest than the chosen state in determining the issue. *Id.*

Here, the Court finds that Delaware law governs Plaintiff's claims against OMH because the parties stated their intention for Delaware law to apply in an express choice-of-law provision and Delaware has a substantial relationship to the parties. The Stock Option Award Agreement's choice-of-law provision provides that the agreement is "to be construed in accordance with and governed by the laws of the state of Delaware." (Stock Option Award Agreement § 17.) The other two agreements incorporated into the Complaint—the Separation Agreement and March 2013 Agreement—do not contain choice-of-law provisions. (*See* Compl. Exs. 2–3.) The Court, however, construes the provisions of these agreements affecting Plaintiff's stock options as amendments to the Stock Option Award Agreement. (*See id.*) These amendments did not modify or displace the parties' choice-of-law provision. (*See id.*) Therefore, the parties stated their intention for Delaware law to apply to this dispute in an express choice-of-law provision. *See Hatfield*, 564 F.3d at 1182.

As for whether OMH, as the proponent of the choice-of-law provision, has met its burden of establishing that Delaware has a substantial relationship to the parties or the transaction in this case, OMH references the Stock Option Award Agreement's statement that OMH is a Delaware corporation. (Mot. 4:27–5:4, ECF No. 8.) The parties to a contract have a substantial relationship to a chosen state such that there is a reasonable basis for enforcing the choice-of-law clause if one of the parties is incorporated in the chosen state. *Nedlloyd*, 3 Cal. 4th at 467; *see also Hatfield*, 564 F.3d at 1183. Thus, Delaware has a substantial relationship to the parties in this case because OMH is incorporated in Delaware.

//

Accordingly, because the parties stated their intention to apply Delaware law in an express choice-of-law provision and Delaware has a substantial relationship to the parties, the Court will enforce the parties' choice-of-law provision, except to the extent that Delaware's law is contrary to a fundamental public policy of California and in which California has a materially greater interest in deciding the issue. *See Nedlloyd*, 3 Cal. 4th at 466. Moreover, the Court will apply Delaware law to all of Plaintiff's claims because they arise out of or relate to the Stock Option Award Agreement. *See id.* at 470 ("[A] valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates.").

Having determined that Delaware law applies to Plaintiff's claims, the Court turns to whether they survive OMH's motion to dismiss.

### 3. *Sufficiency of Plaintiff's Claims under Delaware Law*
#### i. Breach of Contract

To state a breach of contract claim under Delaware law, a plaintiff must allege: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages. *See., e.g.*, *Interim Healthcare v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct. 2005). The plaintiff must identify an express contract provision that the defendant breached in order for the complaint to survive a motion to dismiss. *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007) (citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2D 106, 116 (Del. 2006)).

Here, Plaintiff fails to state a claim for breach of contract under Delaware law. Plaintiff alleges a contractual obligation and damages. (*See* Compl. ¶¶ 18–21.) However, OMH astutely points out that Plaintiff failed to identify a specific contract provision that OMH breached. (Mot. 6:13–26.) In Count One, Plaintiff merely

1   incorporates his factual allegations by reference and states, "Defendant breached the

2   contracts and deprived Plaintiff of the value of his interest in the company." (Compl.

3   ¶ 20.) Plaintiff's factual allegations similarly do not identify an explicit contract

4   provision that OMH breached. (*See id*. ¶¶ 6–17.) Thus, Plaintiff failed to state a claim

5   for breach of contract that is plausible on its face. *See Anderson*, 497 F. Supp. 2d at

6   581 (granting motion to dismiss breach of contract claim because the plaintiffs failed

7   to identify an express contract provision that was breached).

8        Moreover, Plaintiff cannot salvage his claim by identifying a specific contract

9   provision in his opposition to OMH's motion to dismiss. (*See* Opp'n 9:16–27, ECF

10  No. 10.) Although Plaintiff more adequately pleads his breach of contract claim in

11  his opposition, the Court cannot consider his opposition in ruling on OMH's motion

12  to dismiss. *See Schneider*, 151 F.3d at 1197 n.1 ("[A] court may not look beyond the

13  complaint to a plaintiff's moving papers, such as a memorandum in opposition to a

14  defendant's motion to dismiss.").

15       Accordingly, the Court grants OMH's motion to dismiss Count One of the

16  Complaint with leave to amend.

17

18            ii.    **Breach of the Implied Covenant of Good Faith and**

19                   **Fair Dealing**

20       Under Delaware law, the implied covenant of good faith and fair dealing

21  exists in every contract. *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 329 (D.

22  Del. 2014). The covenant requires the parties to a contract "to refrain from arbitrary

23  or unreasonable conduct which has the effect of preventing the other party to the

24  contract from receiving the fruits of the contract." *Id.* (quoting *HSMY, Inc. v. Getty*

25  *Petroleum Mktg.*, 417 F. Supp. 2d 617, 621 (D. Del. 2006)) (internal quotation marks

26  omitted). "Delaware courts have consistently held that obligations based on the

27  covenant of good faith and fair dealing should be implied only in rare instances." *Id.*

28  (citing *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1259 (Del.

2004)); *see also Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 831 (Del. 2005) ("[T]he implied covenant is to be narrowly construed . . . .").

Thus, in order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Terex Corp.*, 54 F. Supp. 3d at 330. Further, it must be "clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith, had they thought to negotiate with respect to the matter." *Id.* (quoting *Allied Capital Corp. v. GC-Sun Holdings*, L.P., 910 A.2d 1020, 1032–33 (Del. Ch. 2006)) (internal quotation marks omitted). When the contract terms expressly address the dispute complained of, "those express terms and not the implied covenant of good faith and fair dealing will govern the parties' relations." *Perlmutter v. Salton*, Inc., No. 09-690-GMS, 2010 WL 3834040, at *4 (D. Del. Sep. 24, 2010).

Here, Plaintiff's second claim is not plausible because he fails to allege a specific implied contractual obligation that OMH allegedly breached. (*See* Compl. ¶¶ 22–28.) In Count Two, Plaintiff merely incorporates his factual allegations by reference and states, "[b]y the conduct alleged above, Defendant unfairly interfered with Plaintiff's right to receive the benefits of the contracts." (*Id.* ¶ 27.) Plaintiff's incorporated factual allegations also do not identify a specific implied contractual obligation that OMH breached. (*See id.* ¶¶ 6–17.) Plaintiff therefore does not identify the implied covenant that OMH allegedly breached anywhere in the Complaint, and this claim is not cognizable.

As with Plaintiff's claim for breach of contract, his arguments in opposition to OMH's motion cannot remedy the inadequacy of the factual allegations in his Complaint. Accordingly, the Court grants OMH's motion to dismiss Count Two of the Complaint with leave to amend.

### iii.   Fraudulent Misrepresentation and Concealment

In Count Three, Plaintiff alleges that OMH intentionally withheld information and made false representations regarding a sale or change in ownership of the company in order to keep Plaintiff from exercising his stock options. (Compl. ¶¶ 30–32.) OMH moves to dismiss Count Three of the Complaint arguing that Plaintiff's claim is barred under Delaware's economic loss doctrine and that Plaintiff fails to allege fraud with sufficient particularly. (Mot. 9:11–12, 10:24–26.) Because Count Three is barred by the economic loss doctrine, this Court need not reach the adequacy of Plaintiff's factual allegations.

Under Delaware law, the economic loss doctrine "prohibits a party from recovering in tort for economic losses, the entitlement to which flows only from the contract." *Edelstein v. Goldstein*, No. CIV.A.09C-05-034DCS, 2011 WL 721490, at *7 (Del. Super. Ct. Mar. 1, 2011); *see also Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195–96 (Del. 1992). "While initially a doctrine related to product liability actions, the courts have expanded the doctrine's application beyond its original scope to any kind of dispute arising from a commercial transaction where the alleged damages do no harm to a person or to property other than the bargained for item. *Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg.*, No. CIV.A. 98C-02-217WCC, 2002 WL 1335360, at *5 (Del. Super. Ct. June 13, 2002). "Economic loss is any monetary loss[ ], costs of repair or replacement, loss of employment, loss of business or employment opportunities, loss of good will, and diminution in value." *Id.* (alternation in original and internal quotation marks omitted).

Delaware recognizes an exception to the economic loss doctrine for claims of fraudulent inducement to contract. *See Templeton*, 868 F. Supp. 2d at 340. However, this exception does not apply if "the statements and assurances for which plaintiff bases his claim were all made at a point in time following the formation of a valid contract." *Id.* at 340 (quoting *Brasby v. Morris*, Civ. No. 10-022, 2007 WL 949485,

15cv1053

at *7 (Del. Super. Ct. Mar. 29, 2007)) (internal quotation marks omitted). If the allegedly fraudulent statements were made after the parties formed a contract, the claims arise from the underlying contract and are better addressed by applicable contract law. *Id.*

To illustrate, Delaware's economic loss doctrine bars a party's claim for fraudulent misrepresentation arising out of conduct occurring during the performance of a purchase agreement concerning membership interests in a medical professional association. *Templeton*, 868 F. Supp. 2d at 340–41. In *Templeton*, the parties entered into a purchase agreement providing for the sale of the plaintiff's teleradiology practice to the defendant. *Id.* at 337. The practice ultimately floundered after the plaintiff allegedly "failed to close deals with new customers and lost existing customers." *Id.* at 337–38. A dispute then arose as to the amount of a payment due under the purchase agreement and whether the defendant failed to meet a contractual deadline to calculate and demand this payment from the plaintiff. *See id.* at 338.

The plaintiff filed a complaint seeking a declaratory judgment regarding the payment due under the purchase agreement. *Templeton*, 868 F. Supp. 2d at 336–37. The defendant counterclaimed for fraudulent misrepresentation, arguing that the plaintiff knowingly withheld information and made false statements regarding the payment obligation and the due date for the payment in dispute. *Id.* at 336, 340. In other words, the defendant's fraudulent misrepresentation claim was predicated on alleged conduct that occurred after the purchase agreement was entered into. *See id.* at 338, 340–41. The court held that the defendant's counterclaim did not fall within the exception to the economic loss doctrine and therefore could not survive a motion to dismiss. *Id.* In doing so, it reasoned that the exception for fraudulent inducement did not apply because the defendant's claim for fraudulent misrepresentation pertained only to performance of the contract and did not arise independently of the underlying contract. *Id.*

1    Here, Plaintiff's claim for fraudulent misrepresentation and concealment is

2   barred by the economic loss doctrine. In the Complaint, Plaintiff alleges that

3   "Defendant through Mehta and others withheld information regarding [the] sale or

4   change in ownership of Defendant. Further, Mehta made a false representation to

5   Plaintiff on October 24, 2013 that no such transaction had taken place." (Compl. ¶

6   30.) Plaintiff also alleges that "Mehta clearly intended Plaintiff to rely on the

7   representation in order to keep Plaintiff from attempting to exercise his options or

8   inquiring about the sale of his options." (*Id*. ¶ 32.) It follows that Plaintiff was

9   harmed because he was unable to exercise his options before they were terminated

10  by the change in ownership of OMH. (*See id.* ¶¶ 14, 16–17, 33.) Thus, Plaintiff's

11  claim seeks redress for only economic losses, "the entitlement to which flows" only

12  from the Stock Option Award Agreement. *See Edelstein*, 2011 WL 721490, at * 7.

13  Therefore, similar to the defendant's claim in *Templeton*, Plaintiff's claim is barred

14  by the economic loss doctrine unless the exception for fraudulent inducement to

15  contract applies.

16    That said, the exception to the economic loss doctrine for fraudulent

17  inducement to contract does not apply here. The alleged misrepresentation and

18  misconduct occurred after the formation of the Stock Option Award Agreement and

19  its modifications expressed in the Separation Agreement and March 2013

20  Agreement, which is again analogous to *Templeton*. The allegations of fraud also

21  relate to the performance of the parties' contract, particularly their agreement as to

22  what would occur if a change in control of OMH transpired prior to Plaintiff

23  exercising his options. (*See* Compl. Ex. 2 ("If a change in control occurs prior to you

24  exercising your options . . . [w]hatever portion the buyer allows the management

25  team to exercise is the same percentage that will be used to determine the number of

26  options you will be able to sell. None of your remaining options will be extended

27  past the change of control.").) Accordingly, Plaintiff's fraud claim does "not arise

28  independently of the underlying contract" and is "better addressed by applicable

– 14 –

1    contract law." *See Templeton*, 868 F. Supp. 2d at 340 (internal quotation marks

2    omitted). Thus, Plaintiff's claim "does not fall within the exception to the economic

3    loss doctrine and does not survive" OMH's motion to dismiss. *See id.* at 341.

4           Plaintiff attempts to save Count Three of the Complaint by arguing that the

5    claim arises in part from OMH fraudulently inducing him to accept the March 2013

6    Agreement. (Opp'n 12:16–27.) This attempt is futile. Because Plaintiff did not allege

7    facts regarding fraudulent inducement to enter into the March 2013 Agreement

8    anywhere in the Complaint, this Court cannot consider whether Plaintiff adequately

9    pled such a claim based on his opposition to OMH's motion. *See Schneider*, 151

10   F.3d at 1197 n.1.

11          Consequently, the Court grants OMH's motion to dismiss Count Three of the

12   Complaint with leave to amend.

13

14          **B.    Motion to Strike Jury Trial Demand**

15          OMH moves to strike Plaintiff's jury trial demand based on the pre-dispute

16   jury trial waiver in the Stock Option Award Agreement. (Mot. 13:4–8.) Under Rule

17   39 of the Federal Rules of Civil Procedure, a district court has the power to strike a

18   jury demand if it "finds that on some or all of [the issues raised] there is no federal

19   right to a jury trial." Fed. R. Civ. P. 39(a)(2). The Seventh Amendment preserves the

20   right to a jury trial for common-law actions. *Granfinanciera, S.A. v. Nordberg*, 492

21   U.S. 33, 41 (1989). Federal law permits a pre-dispute waiver of this right so long as

22   "each party waived its rights knowingly and voluntarily." *In re Cnty. of Orange*, 784

23   F.3d 520, 523 (9th Cir. 2015) (citing *Palmer v. Valdez*, 560 F.3d 965, 968 (9th

24   Cir.2009)). However, pursuant to the federalism principle and related policies

25   recognized in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court

26   "sitting in diversity must apply the relevant state law to evaluate the validity of a

27   pre-dispute jury trial waiver when that law is more protective than federal law." *Id.*

28   at 532.

1    Here, as described above, the parties agreed that Delaware law would govern
2    the Stock Option Award Agreement. Delaware's standard for enforcing pre-dispute
3    jury trial waivers is not more protective than the federal "knowing and voluntary"
4    standard. *See CIT Commc'ns Fin. Corp. v. Level 3 Commc'ns, LLC*, No. CIV.A.06C-
5    01-236 JRS, 2008 WL 2586694, at *5 (Del. Super. Ct. June 6, 2008) (noting under
6    Delaware law "a party may waive the right to trial by jury in many ways, including
7    by contract" and finding the plaintiff "knowingly, intelligently, and voluntarily
8    waived its right to a jury trial"); *Cantor Fitzgerald, Inc. v. Cantor Fitzgerald, L.P.*,
9    No. CIV.A.00C-05-151WCC, 2001 WL 589028, at *2 (Del. Super. Ct. May 24,
10   2001) ("There is no dispute that parties to a contract may waive their right to a jury
11   trial."); *Seaford Assocs. v. Hess Apparel, Inc.*, No. CIV.A. 92C-10-11, 1993 WL
12   258723, at *2 (Del. Super. Ct. June 22, 1993) (enforcing a contract's "clear,
13   ambiguous waiver to a jury trial"). Thus, if Delaware law governs Stock Option
14   Award Agreement's jury trial waiver, the Court would apply the federal standard for
15   enforcing the waiver because Delaware's standard is not more protective than the
16   federal standard. *See In re Cnty. of Orange*, 743 F.3d at 532.

17   Yet, there is a possibility here that another jurisdiction's law governs the
18   enforceability of the parties' pre-dispute jury trial waiver. As mentioned above, the
19   Court applies California's choice-of-law rules in this diversity action. *See Hatfield*,
20   564 F.3d at 1182. These rules provide that a choice-of-law provision will not be
21   enforced if the opponent of the provision can demonstrate: (i) the chosen
22   jurisdiction's law is contrary to a fundamental public policy of California; and (ii)
23   California has a materially greater interest than the chosen state in determining the
24   issue and California "would be the state of the applicable law in the absence of an
25   effective choice of law by the parties." *See Nedlloyd*, 3 Cal. 4th at 465 (quoting
26   Restatement (Second) of Conflict of Laws § 187).

27   In contrast to the federal standard, California law "holds, as a matter of public
28   policy, that a litigant cannot waive its right to a jury trial by entering into a contract

1  that contains a pre-dispute jury trial waiver clause." *In re Cnty. of Orange*, 784 F.3d

2  at 532 (citing *Grafton Partners, L.P. v. Superior Court*, 36 Cal.4th 944 (2005)).

3  Because this rule is more protective than the federal "knowing and voluntary"

4  standard, "district courts sitting in diversity must apply California's rule on pre-

5  dispute jury trial waivers to contracts governed by California law." *Id.* Consequently,

6  there is a possibility that California's law governs this issue, notwithstanding that

7  the parties' choice-of-law provision designates Delaware law and this action was

8  filed in federal court.[2] *See id.*

9       Nevertheless, the Court does not need to determine whether California law

10  ultimately applies to the parties' pre-dispute jury trial waiver. This issue does not

11  need to be reached because even if the less protective federal "knowing and

12  voluntary" standard controls in this case, OMH has failed to establish Plaintiff's

13  waiver was knowing and voluntary.

14       In evaluating whether a waiver is enforceable under the federal standard,

15  "courts commonly consider the following factors: '1) the negotiability of contract

16  terms and negotiations between the parties concerning the waiver provision; 2) the

17  conspicuousness of the waiver provision in the contract; 3) the relative bargaining

18  power of the parties; and 4) the business acumen of the party opposing the waiver.'"

19  *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1058 (N.D. Cal. 2013)

20  (quoting *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 705

21  (S.D.N.Y.2011)) (internal quotation marks omitted). "Courts are divided as to who

22  has the burden of proving that a waiver was knowing and voluntary," but this Court

23  similarly concludes that "the burden should be on the party attempting to enforce the

24  waiver because there is a presumption against waiver." *See id.* at 1058. This

25

26

27  [2] In light of this possibility, the Court requested supplemental briefing from the parties on two issues related to California's choice-of-law analysis. (ECF No. 13.) The parties submitted well-reasoned supplemental briefs that were helpful in informing the Court as these issues. (*See* ECF Nos. 14–15.)

28

presumption exists "because the right to a jury trial is a fundamental one." *Id.* at 1057 (citing *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007)).

In applying these four factors, the only evidence before the Court is the conspicuousness of the waiver provision in the Stock Option Award Agreement. Neither party has submitted evidence concerning: (i) the negotiability of the Stock Option Award Agreement's terms and negotiations between the parties concerning the waiver provision; (ii) the relative bargaining power of the parties; or (iii) the business acumen of Plaintiff.[3] Consequently, these three factors "militate against [OMH] as it is [OMH]'s burden to prove the waiver was knowing and voluntary." *See Cannon*, 917 F. Supp. 2d at 1059.

Thus, although the conspicuousness of the waiver clause in the Stock Option Award Agreement may weigh in favor of finding Plaintiff waived his right to a jury, the Court finds on balance that OMH has not carried its burden of demonstrating that Plaintiff's waver was knowing and voluntary. Moreover, this issue will be more suitable for determination once the parties have had the opportunity to conduct discovery and submit evidence concerning the factors to be considered by the Court. *See generally Impact Mech., Inc. v. Walsh Const. Co.*, No. CV-12-155 BLG DWM, 2013 WL 4046387, at *3 (D. Mont. Aug. 8, 2013) (conducting evidentiary hearing to determine enforceability of jury waiver); *Price*, 808 F. Supp. 2d at 705 (analyzing renewed motion to strike a jury trial waiver in conjunction with evidence submitted in support of a motion for summary judgment); *Allyn v. W. United Life Assurance Co.*, 347 F. Supp. 2d 1246, 1251 (M.D. Fla. 2004) (permitting parties to "file and

---

[3] There is also insufficient evidence before the Court to fully analyze whether California law would apply in the absence of an effective choice of law by the parties. *See ABF Capital Corp. v. Grove Props. Co.*, 126 Cal. App. 4th 204, 221 (2005) (applying the pertinent factors from Restatement (Second) Conflict of Laws § 187, which are: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties).

1   serve sworn affidavit testimony in support of their positions regarding the

2   enforceability of the jury trial waiver").

3          Accordingly, the Court denies without prejudice OMH's request to strike

4   Plaintiff's jury demand. OMH may renew its request to strike Plaintiff's jury demand

5   following the close of discovery.

6

7   **IV.   <u>CONCLUSION</u>**

8          For the foregoing reasons, OMH's motion to dismiss and strike the jury trial

9   demand (ECF No. 8) is **GRANTED IN PART** and **DENIED IN PART**. The Court

10  **GRANTS** OMH's motion to dismiss Plaintiff's Complaint. Plaintiff is given leave

11  to amend all of his claims. If Plaintiff chooses to file a First Amended Complaint, it

12  must be filed no later than **<u>June 24, 2016</u>**. In addition, the Court **DENIES**

13  **WITHOUT PREJUDICE** OMH's request to strike Plaintiff's jury trial demand.

14  OMH may renew its request once the parties have completed discovery.

15         **IT IS SO ORDERED.**

16

17  **DATED: May 25, 2016**

18                                                 **Hon. Cynthia Bashant**
                                                   **United States District Judge**

19

20

21

22

23

24

25

26

27

28