UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FUNDINGSLAND,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>OMH HEALTHEDGE HOLDINGS, INC.,<br><br>　　　　　　　　Defendant. | Case No. 15-cv-01053-BAS(WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT OMH HEALTHEDGE HOLDINGS, INC.'S MOTION TO DISMISS**<br><br>**[ECF No. 24]** |

## I. INTRODUCTION

On May 11, 2015, Plaintiff John Fundingsland commenced this action against his former employer Defendant OMH Healthedge Holdings, Inc. ("OMH"). (ECF No. 1.) This action arises out of a "Stock Option Award Agreement" in which OMH granted Plaintiff stock options as part of his employment compensation. Plaintiff brings claims against OMH for breach of the Stock Option Award Agreement, breach of the implied covenant of good faith and fair dealing arising from the agreement, and fraudulent misrepresentation and inducement pertaining to the agreement.

//

1    OMH successfully moved to dismiss all claims in Plaintiff's Complaint. (ECF
2  No. 16.) However, the Court granted Plaintiff leave to amend his Complaint. (*Id.*)
3  Plaintiff has amended his Complaint, and OMH now similarly moves to dismiss all
4  claims in Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the
5  Federal Rules of Civil Procedure. (ECF No. 18.) Plaintiff opposes OMH's motion.
6  (ECF No. 22.)

7    The Court finds this motion suitable for determination on the papers submitted
8  and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the
9  reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART**
10 OMH's motion to dismiss the First Amended Complaint.

12 **II.   BACKGROUND**

13   Plaintiff worked as the Chief Operating Officer of OMH's company in India
14 from approximately April 2011 to May 2012. (Am. Compl. ¶¶ 6–9, ECF No. 17.)
15 As part of Plaintiff's compensation, OMH granted Plaintiff stock options via the
16 parties' Stock Option Award Agreement. (*Id.* ¶ 6, Ex. 1 ("Stock Option Award
17 Agreement").) This agreement incorporates a "Notice of Stock Option Award" that
18 grants Plaintiff the right to purchase 268 shares of OMH's stock for an exercise
19 price of $2,493.34, subject to a vesting schedule. (*Id.* ¶ 7.)

20   After Plaintiff terminated his employment with OMH, Plaintiff and OMH
21 entered into a written separation agreement ("Separation Agreement") dated May
22 28, 2012, which modified some of the terms of Plaintiff's original employment
23 letter and the Stock Option Award Agreement. (Am. Compl. ¶ 9, Ex. 2.) The
24 Separation Agreement specifies that Plaintiff must exercise his stock options by
25 October 15, 2012. (*Id.*) The Separation Agreement also provides that:

26> If a change of control occurs prior to you exercising your options, it is
27> anticipated that the buyer will only purchase a portion of the
>   outstanding options from the management team (50% is our
28> expectation but will be up to the buyer), which you are a part of.

|   |   |
|---|---|
| 1 | Whatever portion the buyer allows the management team to exercise is the same percentage that will be used to determine the number of options you will be able to sell. |
| 2 |   |

3   (*Id.* ¶ 10.)

4   Finally, on or about March 29, 2013, Plaintiff and OMH entered into another
5   written agreement ("March 2013 Agreement"), which again modified the Stock
6   Option Award Agreement by extending the exercise date for Plaintiff's stock
7   options to December 31, 2013, and reducing the number of his options from 268 to
8   90. (Am. Compl. ¶ 11, Ex. 3.)

9   OMH is not a publicly-traded company. (Am. Compl. ¶ 12.) Therefore,
10  Plaintiff alleges OMH "controlled all information relating to the fair market value
11  of its shares." (*Id.*) The First Amended Complaint states: "Without such
12  information, i.e. whether the fair market value exceeded the exercise price in the
13  notice, Plaintiff could not make a decision as to whether it made sense to exercise
14  his options." (*Id.*) Plaintiff claims he repeatedly requested information from OMH
15  regarding the fair market value of the company's shares, but OMH never provided
16  such information. (*Id.*)

17  Plaintiff further alleges he "repeatedly inquired as to whether there were any
18  plans to sell the company or if a change in control of ownership was imminent."
19  (Am. Compl. ¶ 13.) He claims he "was repeatedly told no." (*Id.*) Specifically, on
20  October 24, 2013, Plaintiff alleges he spoke with Anurag Mehta, a co-founder and
21  president of the company, who categorically denied that any sale or negotiations to
22  sell the company had occurred. (*Id.* ¶ 15.) Plaintiff alleges Mehta stated, "there is
23  no activity of any kind concerning any company transaction." (*Id.*)

24  Then, on January 29, 2014, Mehta informed Plaintiff that a change in
25  ownership occurred in August 2013 and that Plaintiff's options terminated as a
26  result. (Am. Compl. ¶ 16.) Plaintiff alleges OMH intentionally withheld information
27  to keep Plaintiff from exercising his options. (*Id.* ¶ 17.) Plaintiff believes other
28  members of OMH's management team were able to sell at least fifty percent of their

options to the new majority shareholder. (*Id*.)

Based on the foregoing, Plaintiff brings claims against OMH for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) fraudulent misrepresentation and concealment. (Am. Compl. ¶¶ 18–40.)

## III.  LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have

violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

When a claim is based on fraud or mistake, the circumstances surrounding the fraud or mistake must be alleged with particularity. Fed. R. Civ. P. 9(b). If the allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). To satisfy the particularity requirement of Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Plaintiffs must plead enough facts to give defendants notice of the time, place, and nature of the alleged fraud, together with the content of any alleged misrepresentation and explain why it is false or misleading. *See id.* at 1107. The circumstances constituting the alleged fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

In ruling on a Rule 12(b)(6) motion, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996). Moreover, a court may consider the full text of

1  those documents even when the complaint quotes only selected portions. *Id.*

2  As a general rule, a court freely grants leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

## IV.  DISCUSSION

The Court addressed the threshold issue of choice of law in its prior Order on OMH's motion to dismiss Plaintiff's Complaint. (ECF No. 16.) Delaware law applies to Plaintiff's claims against OMH because the parties stated their intention for Delaware law to apply in an express choice-of-law provision and Delaware has a substantial relationship to the parties. (*Id.*) Thus, the Court turns to whether Plaintiff's claims are sufficient under Delaware law.

### A.  Breach of Contract

"In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). The plaintiff must identify an express contract provision that the defendant breached in order for the complaint to survive a motion to dismiss. *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007) (citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006)).

Here, Plaintiff's First Amended Complaint satisfies these requirements by alleging OMH has breached an express contract provision that has damaged

1  Plaintiff. There is no dispute that Plaintiff alleges the existence of a contract. Rather,
2  OMH argues that Plaintiff's amended complaint fails to identify an express contract
3  provision that OMH has breached—the second element of a breach of contract claim
4  under Delaware law. (Mot. 4:25–7:6.) The Court disagrees. Plaintiff's amended
5  pleading specifically alleges OMH breached the following express contract
6  provision: "If a change in control occurs prior to you exercising your options, it is
7  anticipated that the buyer will only **purchase a portion of the outstanding options**
8  **from the management team** (50% is our expectation but will be up to the buyer),
9  **which you are a part of**." (Am. Compl. ¶¶ 22–23 (emphasis added).) Plaintiff
10 alleges that this provision created a contractual obligation that OMH must treat
11 Plaintiff as part of the management team in regards to his ability to exercise his stock
12 options. (*Id.* ¶¶ 24–25.) Plaintiff further alleges that OMH breached this contractual
13 obligation by failing to share information that was necessary for Plaintiff to properly
14 exercise his stock options as part of the management team. (*Id.*) Plaintiff states he
15 has been damaged by being deprived of his interest in the company as the result of
16 OMH's breach of contract. (*Id.* ¶ 25.) Thus, Plaintiff demonstrates the existence of
17 a contract, a breach of an obligation imposed by that contract, and the resultant
18 damage from the breach of the obligation. Plaintiff therefore states a claim for breach
19 of contract under Delaware law. *See VLIW Tech., LLC*, 840 A.2d at 612.
20     Accordingly, the Court denies OMH's motion to dismiss Count One of the
21 First Amended Complaint.
22
23     **B.    Breach of the Implied Covenant of Good Faith and Fair Dealing**
24     Under Delaware law, the implied covenant of good faith and fair dealing
25 exists in every contract. *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 329 (D.
26 Del. 2014). The covenant requires the parties to a contract "to refrain from arbitrary
27 or unreasonable conduct which has the effect of preventing the other party to the
28 contract from receiving the fruits of the contract." *Id.* (quoting *HSMY, Inc. v. Getty*

*Petroleum Mktg., Inc.*, 417 F. Supp. 2d 617, 621 (D. Del. 2006)). "Delaware courts have consistently held that obligations based on the covenant of good faith and fair dealing should be implied only in rare instances." *Id.* (citing *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1259 (Del. 2004)); *see also Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 830–31 (Del. 2005) ("[T]he implied covenant is to be narrowly construed . . . .").

Thus, in order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *TL of Fla., Inc.*, 54 F. Supp. 3d at 330. Further, the test for the implied covenant depends on whether it is "clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith, had they thought to negotiate with respect to the matter." *Id.* (quoting *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032–33 (Del. Ch. 2006)). When the contract terms expressly address the dispute complained of, "those express terms and not the implied covenant of good faith and fair dealing will govern the parties' relations." *Perlmutter v. Salton, Inc.*, No. 09-690-GMS, 2010 WL 3834040, at *4 (D. Del. Sep. 24, 2010). The implied covenant of good faith "is the obligation to preserve the *spirit* of the bargain." *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 444 (Del. 2005) (quoting *Pierce v. Int'l. Ins. Co. of Ill.*, 671 A.2d 1361, 1366 (Del. 1996)).

Here, Plaintiff alleges in his amended pleading that OMH had an implied contractual obligation to provide Plaintiff with information about the change in control of OMH's ownership and the fair market value of the company's shares. (Am. Compl. ¶ 31.) The First Amended Complaint states: "By refusing to provide Plaintiff with the fair market value of Defendant's shares, and by concealing the change in control of ownership of Defendant's company even after Plaintiff

requested this information, Defendant frustrated Plaintiff's ability to exercise the options granted to him by Defendant in the form of the Stock Option Award Agreement (Exhibit 1)." (*Id.*)

This case is a rare instance where the implied covenant of good faith and fair dealing is applicable under Delaware law. As mentioned, the implied covenant of good faith and fair dealing should be applied where the parties would have expressly agreed to include the alleged implied contractual obligation had they thought to negotiate with respect to the matter. In the Court's view, OMH would have expressly agreed to share information about the value of the company's shares and the company's ownership status with Plaintiff had the parties thought to negotiate with respect to the matter because the contract lacks any benefit to Plaintiff without access to such information. OMH allegedly withholding this information from Plaintiff has the effect of preventing Plaintiff from receiving the "fruits of the contract." *See TL of Fla., Inc.*, 54 F. Supp. 3d at 329 (quoting *HSMY, Inc.*, 417 F. Supp. 2d at 621). It is clear from the Stock Option Award Agreement that the spirit of the bargain was for Plaintiff to gain value from the contract by having an opportunity to exercise his stock options. (*See generally* Stock Option Award Agreement.) By allegedly failing to disclose necessary information regarding its shares and a forthcoming change in ownership, OMH did not fulfill its obligation to preserve the spirit of the bargain between the parties. Therefore, Plaintiff plausibly states a claim for breach of the implied covenant of good faith and fair dealing under Delaware law. *See TL of Fla., Inc.*, 54 F. Supp. 3d at 330.

Accordingly, the Court denies OMH's motion to dismiss Count Two of the First Amended Complaint.

### C. **Fraud**

In Count Three, Plaintiff alleges that OMH intentionally withheld information and made fraudulent misrepresentations regarding a sale or change in ownership of

1  the company in order to prevent Plaintiff from exercising his stock options. (Am.
2  Compl. ¶ 34.) Plaintiff further alleges that OMH fraudulently induced him to enter
3  into their March 2013 Agreement by making promises that OMH had no intention
4  of fulfilling. (*Id.* ¶¶ 34–37.) OMH moves to dismiss the fraudulent misrepresentation
5  claim of the amended pleading by arguing that Plaintiff's claim is barred under
6  Delaware's economic loss doctrine. (Mot. 2:7–9.) OMH also argues that "Plaintiff
7  fails to allege specific facts that lead to a reasonable inference that Defendant had
8  no intention of performing the promise at the time the promise was made." (*Id.* 2:13–
9  15.) As discussed below, the Court determines that (i) Plaintiff's fraudulent
10 misrepresentation claim is barred by the economic loss doctrine, and (ii) his
11 fraudulent inducement claim fails to allege specific facts that prove OMH made its
12 alleged promise with the intention of never performing the promise.

13      Under Delaware law, the economic loss doctrine "prohibits a party from
14 recovering in tort for economic losses, the entitlement to which flows only from the
15 contract." *Edelstein v. Goldstein*, No. 09C-05-034 DCS, 2011 WL 721490, at *7
16 (Del. Super. Ct. Mar. 1, 2011); *see also Danforth v. Acorn Structures, Inc.*, 608 A.2d
17 1194, 1195–96 (Del. 1992). "While initially a doctrine related to product liability
18 actions, the courts have expanded the doctrine's application beyond its original
19 scope to any kind of dispute arising from a commercial transaction where the alleged
20 damages do no harm to a person or to property other than the bargained for item.
21 *Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg.*, No. 98C-02-
22 217WCC, 2002 WL 1335360, at *5 (Del. Super. Ct. June 13, 2002). "Economic loss
23 is any monetary loss[ ], costs of repair or replacement, loss of employment, loss of
24 business or employment opportunities, loss of good will, and diminution in value."
25 *Id.*

26      Delaware recognizes an exception to the economic loss doctrine for claims of
27 fraudulent inducement to contract. *Philip A. Templeton, M.D., P.A. v. EmCare, Inc.*,
28 868 F. Supp. 2d 333, 340 (D. Del. 2012). However, this exception does not apply if

1  the "statements and assurances for which plaintiff bases his claim were all made at
2  a point in time following the formation of a valid contract." *Id.* (quoting *Brasby v.*
3  *Morris*, Civ. No. 10-022, 2007 WL 949485, at *8 (Del. Super. Ct. Mar. 29, 2007)).
4  If the allegedly fraudulent statements were made after the parties formed a contract,
5  the claim arises from the underlying contract and is better addressed by applicable
6  contract law. *Id.*

7        Here, Plaintiff's claim for fraudulent misrepresentation and concealment is
8  barred by the economic loss doctrine. In his First Amended Complaint, Plaintiff
9  alleges that "Defendant through Mehta and others withheld information regarding
10 [the] sale or change in ownership of Defendant. Further, Mehta made a false
11 representation to Plaintiff on October 24, 2013 that no such transaction had taken
12 place." (Am. Compl. ¶ 34.) Plaintiff also alleges that "Mehta clearly intended
13 Plaintiff to rely on the representation in order to keep Plaintiff from attempting to
14 exercise his options or inquiring about the sale of his options." (*Id*. ¶ 36.) It follows
15 that Plaintiff was harmed because he was unable to exercise his options before they
16 were terminated by the change in ownership of OMH. (*See id.* ¶¶ 15–16, 39.) Thus,
17 Plaintiff's claim seeks redress for only economic losses, "the entitlement to which
18 flows" only from the Stock Option Award Agreement. *See Edelstein*, 2011 WL
19 721490, at * 7. Therefore, Plaintiff's claim is barred by the economic loss doctrine
20 unless the exception for fraudulent inducement to contract applies.

21       Plaintiff attempts to invoke this exception by alleging the claim arises from
22 OMH fraudulently inducing him to accept the March 2013 Agreement. (Am. Compl.
23 ¶ 37.) "[W]hen a plaintiff pleads a claim of promissory fraud, in that the alleged false
24 representations are promises or predictive statements of future intent rather than past
25 or present facts, the plaintiff must meet an even higher threshold. In this situation,
26 the plaintiff 'must plead specific facts that lead to a reasonable inference that the
27 promisor had no intention of performing at the time the promise was made.'"
28 *MicroStrategy Inc. v. Acacia Research Corp.*, No. 5735-VCP, 2010 WL 5550455,

1 at *15 (Del. Ch. Dec. 30, 2010) (quoting *Grunstein v. Silva*, No. 3932–VCN, 2009 WL 4698541, at *13 (Del. Ch. Dec. 8, 2009)). Here, Plaintiff's claim lacks the specific factual allegations required to meet the high threshold for promissory fraud. Plaintiff alleges that OMH's promise to treat him as part of the management team "was false at the time it was made, as evidenced by Defendant's refusal to provide Plaintiff with the requested information regarding the fair market value of the shares and any potential change in control of ownership of Defendant's company." (Am. Compl. ¶ 37.) Yet, this allegation merely states OMH never intended to comply with its promise because it in fact did not later comply with its promise. Without more specific allegations, Plaintiff fails to allege a fraudulent inducement claim under Delaware law; therefore, the exception to the economic loss doctrine for fraudulent inducement to contract does not apply. Moreover, Plaintiff's claim for fraud generally does not satisfy Rule 9(b), which requires "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *See Vess*, 317 F.3d at 1106 (quoting *Cooper*, 137 F.3d at 627).

Consequently, the Court grants OMH's motion to dismiss Count Three of the First Amended Complaint. This Court freely grants leave to amend a claim that has been dismissed. *See* Fed. R. Civ. P. 15(a). Because it is possible that Plaintiff can allege additional facts that demonstrate he was fraudulently induced to enter into the March 2013 Agreement, the Court will grant Plaintiff one final opportunity to amend his fraud claim. *See Schreiber Distrib. Co.*, 806 F.2d at 1401. The Court emphasizes that Plaintiff's fraud allegations will need to satisfy Rule 9(b)'s pleading standard. *See* Fed. R. Civ. P. 9(b).

//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, OMH's motion to dismiss Plaintiff's First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court denies OMH's motion to dismiss Count One and Count Two, but the Court grants OMH's request to dismiss Count Three. Further, Plaintiff is given leave to amend Count Three. If Plaintiff chooses to file a Second Amended Complaint, it must be filed no later than **November 11, 2016**.

**IT IS SO ORDERED.**

DATED: October 21, 2016

Hon. Cynthia Bashant
United States District Judge